## PORTERFIELD *v.* BOND.

*(Circuit Court, S. D. Mississippi, W. D.* January 19, 1889.)

1. RAILROAD COMPANIES—OPERATION OF ROAD—INJURIES TO REAL ESTATE.
   Section 1047 of the Revised Code of 1880, which prohibits the running of railroad trains through incorporated cities and towns at a greater rate of speed than six miles per hour, and makes the railroad company liable for any damage or injury which may be sustained by any one from such trains, while running at a greater rate of speed than six miles per hour, through any such incorporated city or town, applies to damages and injuries done to real estate as well as to personal property.

2. SAME.
   A railroad company is liable to the owner of real estate, situated in an incorporated city or town, for damage and injury done to his house and buildings by vibrations of the soil, where it can be shown that such damage and injury is the direct result of traveling at a greater rate of speed than six miles per hour.

3. EMINENT DOMAIN—DAMAGES.
   Where damages are assessed in an *ad quod damnum* proceeding for a railroad right of way, only such damages as will naturally and reasonably flow from a lawful use of the right of way can be taken into account by the commissioners called to make the assessment; and if, after the assessment is made, and the company takes possession, they make an unlawful use of the right of way, and damages flow therefrom, the owner is entitled to additional damages; such additional damages not having been included in the original assessment.

*(Syllabus by the Court.)*

At Law.

Action by Julia Porterfield against F. S. Bond, as receiver of the Vicksburg & Meridian Railroad Company, to recover damages for injuries to land.

*McCabe & Anderson* and *Miller, Smith & Hirst,* for petitioner.
*Birchett & Gilland,* for defendant.

HILL, J. This issue is submitted upon petition, answer, and proofs, from which the following facts appear: That the petitioner is, and has been for many years, the owner of the lots described in the pleadings, and the improvements thereon, situated in the city of Vicksburg. That, for the consideration of $10,400 paid to her, she, before the injuries complained of, conveyed to the trustees for the Vicksburg & Meridian Railroad Company a right of way over said lots and property. That when this conveyance was made, and for some time thereafter, trains were only run to the bank of the river, and were of the usual weight, and were run at a slow rate of speed, which did no damage to the buildings and improvements of petitioner on these lots, but that since the road has been in the hands of the receiver, and operated by his employes, this portion of the road-bed has become a part of an extensive line of railroad, over which large and heavy trains are drawn by large and heavy engines. That on the grounds of the petitioner the road is of an unusually steep grade, and makes a curve; and that to ascend this part of the road it is necessary, with a heavy train, to increase the speed

to much more than six miles an hour,—the speed limited by the statute of the state for trains on railroads passing through incorporated towns and cities. It is admitted by the answer, and shown by the proof, that the trains, both freight and passenger, pass over this part of the road at a much greater rate of speed than six miles per hour; but it is not shown that the speed is greater than necessary, unless there be a division of the trains, or a doubling of engines. The proof shows that since these heavy trains have been in operation, and the rate of speed increased, the large brick residence of the petitioner, together with a tenement house on her lot, situated near the railroad track, have been greatly damaged by the breaking off of the plastering, the loosening of the bricks, the breaking and injuring of the roof of the residence, the cracking of the wall of the residence from the bottom to the top, and by other injuries not necessary to specify. The injuries are all on the side of the building next to the railroad track. The weight of the testimony is decidedly to the effect that these injuries have been produced by the running of the trains over this part of the track. There is some diversity of opinion between the witnesses on the part of the petitioner and that of the defendant as to whether or not they were produced by the increased rate of speed, but the weight of the testimony is that they were so caused. The fact that all these injuries occurred after the speed was increased upon this part of the track is of itself strong evidence that the increased speed, with the heavy trains, caused the damage; but this, it seems to me, is conclusively proven by Mr. Gregory, who repaired the chimneys, and who testified that while on top of the building when the same trains were passing slowly there was very little shaking or vibration, but when passing rapidly he was compelled to remove to a place of safety to prevent himself from being thrown from the scaffolding.

I have long since found that experience is much stronger than theory. Without further comment on the testimony, I am satisfied that the injuries to these buildings complained of resulted from the excessive speed at which these heavy trains were run over the track on petitioner's grounds, or, rather, through them. The injuries to the cisterns is more doubtful; to a portion of them, at least. It is earnestly urged by defendant's counsel that as the right of way over the petitioner's grounds has been purchased and paid for at a large price, it included payment for the damages complained of; or, in other words, that the defendant, or the railroad company for whom he is acting as receiver and representative, is the owner of the right of way through petitioner's grounds, and entitled to run the trains over it at any rate of speed that may be necessary, without committing any violation of law, rendering himself or the interest represented by him liable for the injuries complained of. I am of the opinion that the purpose of the legislature in limiting the speed of trains passing through towns and cities to six miles an hour, prescribed in section 1047, Code 1880, was for the purpose of preventing injuries to persons and property, real and personal; and therefore the corporation, of which the receiver is the representative in its operation, is liable for any injuries committed by the running of the train, while

running at a greater rate of speed than six miles an hour, provided the injury is the result of the increased rate of speed. In this case I am satisfied the injuries resulted from the increased rate of speed, and therefore must hold the receiver, or, rather, the funds in his hands, liable for the damages. For these injuries petitioner by her petition claims the sum of $2,500. The proof fully sustains this claim, and for which, with the cost, the petitioner is entitled to a decree, to be paid out of the money in the hands of the receiver.

The petitioner further alleges that the defendant, by his employes, in making a ditch or sewer, so changed the flow of the water as to divert it from its natural channel, and threw it upon certain lots of ground owned by her, and by which her said property has been greatly damaged. I have examined the proof on this point. I am satisfied a portion of the water thrown upon the petitioner's lots has been caused by the change made, but not all; and how much has been so diverted is uncertain. Again, if the pipe or sewer made by the Compress Company was constructed before the sewer was made by defendant's employes, then petitioner's premises would have had the same water thrown upon her lots. The proof is uncertain as to which was first made. Petitioner was, in addition to this, after this sewer was made, paid the sum of $400 for making embankments on her lots. This injury from the sewer must then have occurred, and should have been, if it was not, embraced in that settlement. So that, upon the whole case, I do not believe any damages should be allowed for this portion of the complaint.